IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN JONES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07-2263 |
| | ) | |
| v. | ) | |
| | ) | |
| OFFICER EDWARD YANCEY, | ) | |
| individually and as an Officer of | ) | |
| the Memphis Police Department; | ) | |
| OFFICER JERRY WALKER, | ) | |
| individually and as an Officer of | ) | |
| the Memphis Police Department; | ) | |
| LARRY A. GODWIN, individually and | ) | |
| in his capacity as Police | ) | |
| Director for the City of Memphis; | ) | |
| and THE CITY OF MEMPHIS, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT

Before the Court are the February 1 & 25, 2010, Motions for Summary Judgment of Defendants Officer Edward Yancey, Officer Jerry Walker (collectively the "Officers"), and the City of Memphis (the "City"). (See Dkt. Nos. 86, 92.) Defendant Larry A. Godwin, Director of the Memphis Police Department, moves to join in the Officers' and the City's Motions. (See Dkt. Nos. 90, 93.) The Officers also move to join in the City's Motion. (See Dkt. No. 95.) Plaintiff John Jones responded in opposition

to the Motions on March 22 and April 28, 2010.  (See Dkt. Nos. 101, 111.)

Jones alleges that the Officers violated his rights under the Fourth and Fourteenth Amendments to the Constitution when they arrested him after an April 8, 2006 traffic accident. Jones also alleges causes of action under 42 U.S.C. § 1985(3) for conspiracy to interfere with his civil rights and under Tennessee common law.  The Court GRANTS the joinder Motions filed on behalf of the Officers and Director Godwin.  For the following reasons, the Court also GRANTS the City's and Director Godwin's Motions for Summary Judgment.  The Officers' Motion for Summary Judgment is GRANTED on Plaintiff's Fourth Amendment unlawful arrest claim and Fourteenth Amendment claims and DENIED on Plaintiff's Fourth Amendment excessive force claim.

## I.   FACTUAL BACKGROUND

Unless otherwise stated in this Order, all facts discussed are undisputed for purposes of the Motion for Summary Judgment. On April 8, 2006, Jones drove his 1995 Ford Ranger north on Prescott Road, toward its intersection with Christine Road, in Memphis, Tennessee.  (Officers' Statement of Undisputed Material Facts, Dkt. No. 86-1, ¶¶ 1-2.) ("Officers' SOF")  An unknown driver swerved in front of him, causing him to run off the road and strike a utility pole.  (Id. ¶ 3.)  Jones later identified this unknown driver as a "cop."  (Id.)  A nearby resident,

Darron Easley, learned of the crash and came to render assistance. Easley gave Jones a ride to Jones' house so that Jones could call his brother, the owner of the Ford Ranger. (Id. ¶¶ 5-6.) Jones did not report the collision to the Memphis Police Department. (Id. ¶ 7.)

After making his telephone calls, Jones returned to the scene of the collision with Easley's help. A Police Service Technician ("PST") had arrived at the collision site.[1] (Defendant City of Memphis' Statement of Undisputed Facts, Dkt. No. 92-2, ¶ 2.) ("City's SOF") What happened next is hotly disputed. What is not disputed is that Officers Yancey and Walker arrived at the scene and arrested Jones. At some point, the Officers sprayed Jones with pepper spray.[2] (Officers' SOF ¶ 16.) Jones asserts that he suffered multiple injuries from his encounter with Yancey and Walker, including a broken finger and a broken rib. (Pl's First SOF ¶ 17.) Jones was charged with reckless driving, driving without a license, violating the financial responsibility law, and resisting arrest. (City's SOF ¶ 5.) The State later dropped all charges.

On April 3, 2007, Jones filed suit against the Officers, Director Godwin, and the City of Memphis under 42 U.S.C. § 1983

---

[1] The PST's identity is not found in any of the parties' filings, and how the PST discovered the accident is unknown.
[2] Jones disputes the Officers' account of the timing. Jones asserts that the Officers sprayed him after he had been handcuffed and that the Officers also physically assaulted him. (Plaintiff's Response to Officers' Statement of Facts, Dkt. No. 101-2, ¶ 16.) ("Pl's First SOF")

and common law negligence theories. (Amended Compl. ¶¶ 21-22, 26-28, 32-41.) He argues that the Officers' unlawful arrest and use of excessive force in effecting that arrest violated his rights under the Fourth and Fourteenth Amendments to the Constitution. (Id. ¶ 19a.) Jones also asserts claims of assault and battery, false arrest, false imprisonment, negligence, and conspiracy to violate his civil rights against the Officers. (Id. ¶¶ 23-33); see also 42 U.S.C. § 1985(3). He seeks attorney's fees under 42 U.S.C. § 1988. (Amended Compl. ¶ 1.)

On February 17, 2010, this Court entered an order granting the City's Motion for Judgment on the Pleadings. See Fed. R. Civ. P. 12(c). The Court dismissed Jones' state common law tort claims and Fourteenth Amendment claims against the City. Jones v. Yancey, No. 07-2263, 2010 U.S. Dist. LEXIS 13792, at *10-13 (W.D. Tenn. Feb. 17, 2010). The Court also dismissed Jones' claim for punitive damages against the City. Id. at *7. Neither the Officers nor Director Godwin joined in the City's Motion for Judgment on the Pleadings. The Defendants' pending Motions for Summary Judgment test the trial-worthiness of Jones' suit.

## II.   JURISDICTION, CHOICE OF LAW, AND STANDARD OF REVIEW

This Court has original jurisdiction over Plaintiff's federal claims under the general federal question jurisdiction

provided by 28 U.S.C. § 1331 and the specific jurisdiction provided by 28 U.S.C. § 1343(a) to redress claims of conspiracies to violate civil rights. The supplemental jurisdiction provided by 28 U.S.C. § 1367 permits this Court to hear Plaintiff's related state-law claims. No party has asserted that it would be inappropriate for this Court to exercise supplemental jurisdiction over Plaintiff's state-law claims. The parties also assume that Tennessee law governs Plaintiff's state law claims, and the Court will apply Tennessee law to those claims.

Under Federal Rule of Civil Procedure 56, the party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by demonstrating that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the respondent must set forth specific facts showing that there is a genuine issue for trial. A genuine

issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). One may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmovant must present "concrete evidence supporting . . . [his] claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for such evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989). The nonmovant has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in his favor. See id. "Summary judgment is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

### III. ANALYSIS

#### A. Fourteenth Amendment Claims

Defendant Officers Walker and Yancey and Director Godwin move for summary judgment on Plaintiff's claim that they violated his rights under the Due Process Clause of the Fourteenth Amendment. (Defendant Officers' Reply in Support of Their Motion for Summary Judgment, Dkt. No. 104, at 8.) The Officers and Godwin echo the argument successfully made earlier by the City that, because Jones alleges that the Officers used excessive force to effect his arrest, Jones' claim is properly characterized under the Fourth Amendment, rather than the Fourteenth Amendment's requirement of substantive due process. (Id.)

"[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." County of Sacramento v. Lewis, 523 U.S. 833, 840 (1998) (internal quotation marks and citation omitted). Because the Supreme Court has been reluctant to expand the scope of substantive due process, it has explained that, "where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of governmental behavior, that Amendment, not the more generalized notion of substantive due process" applies. Id. at 842 (internal quotation marks and citation omitted). Jones' claims are based on the Officers' alleged use of excessive force during

his arrest.   (See Amended Compl. ¶ 12 (describing the Officers'
actions as "unnecessary, unreasonable, and excessive").)   Those
allegations are covered by the Fourth Amendment's explicit
textual protection against "unreasonable searches and seizures."
See U.S. Const. amend IV.   Because a specific constitutional
provision applies, Jones cannot state a substantive due process
claim under the Fourteenth Amendment.   See County of Sacramento,
523 U.S. at 842.   The Court, therefore, GRANTS summary judgment
on Jones' Fourteenth Amendment claims against the Officers and
Director Godwin.   See Graham v. Connor, 490 U.S. 386, 388 (1989)
("A free citizen's claim that law enforcement officials used
excessive force in the course of making an arrest, investigatory
stop, or other 'seizure' of his person . . . . [is] properly
analyzed under the Fourth Amendment's 'objective reasonableness'
standard rather than under a substantive due process
standard.").

### B. Fourth Amendment Claims

Jones brings two claims against Officers Yancey and Walker
under the Fourth Amendment.   First, he asserts that the Officers
arrested him without probable cause.   Second, he argues that the
Officers used excessive force in effecting that arrest.
(Plaintiff's Response in Opposition to Defendant Officers'
Motion for Summary Judgment, Dkt. No. 101, at 4.) ("Pl's First
Resp.")   The Officers respond that Plaintiff has failed to show

that they are not entitled to qualified immunity. (Defendant Officers Motion for Summary Judgment, Dkt. No. 86, at 9-13.) ("Officers' Mot.")

"Government officials who perform discretionary functions are generally protected from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Merriweather v. Zamora, 569 F.3d 307, 314 (6th Cir. 2009) (internal quotation marks and citations omitted). Courts should resolve questions of qualified immunity as quickly as possible because qualified immunity "is an immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis in original). Thus, "it is effectively lost if a case is erroneously permitted to go to trial." Id.

The qualified immunity analysis is a two-step process. To survive summary judgment, a plaintiff must show that 1) the facts, taken in the light most favorable to them, demonstrate that the police officers violated a constitutional right; and 2) the constitutional right in question was clearly established. See Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009). The right must be clearly established in a particularized sense so that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz,

9

533 U.S. 194, 202 (2001) (citation omitted), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Pearson</u>, 129 S. Ct. at 813.   Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).

### 1. Arrest without probable cause

The Officers argue that they are entitled to summary judgment on Jones' claim that they arrested him without probable cause in violation of the Fourth Amendment.   They argue that they had two bases for arresting Jones: 1) that he could not produce his driver's license or other satisfactory identification and 2) that he refused to sign his misdemeanor citation.   (Officer's Mot. at 10.)   Jones responds that significant factual discrepancies in the testimony of the Officers prevent the Court from finding that the Officers are entitled to qualified immunity.   (Pl's First Resp. at 7.)

There is no doubt that "it is clearly established that arrest without probable cause violates the Fourth Amendment." <u>Leonard v. Robinson</u>, 477 F.3d 347, 355 (6th Cir. 2007). However, in evaluating whether an officer's decision to arrest a suspect violated the Fourth Amendment, a court must take into account the specific facts involved and, in particular, "the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving." <u>Graham</u>, 490 U.S. at 397.   Fluid situations

10

may lead officers to make "reasonable mistakes" about the legal constraints under which they are operating. <u>Saucier</u>, 533 U.S. at 205. If an officer takes a reasonable action – even if it later turns out to be mistaken – he is entitled to qualified immunity. <u>See</u> <u>id.</u>

Tennessee Code Annotated § 40-7-118(c)(3) requires that officers arrest an individual if he "cannot or will not offer satisfactory evidence of identification." The Officers assert that they properly arrested Jones because he could not produce his driver's license when requested to verify his identity. To support their assertion, the Officers point to the official record of Jones' arrest, which reflects that Yancey and Walker arrested Jones for driving without a license. (<u>See</u> Record of Arrest, Dkt. No. 92-16); <u>see</u> <u>also</u> Tenn. Code Ann. § 55-50-351 (providing that police officers may "effect the arrest of any person" found to be driving without a license).

Despite the official record, the Officers' deposition testimony does not support their contention that they arrested Jones for failing to show his driver's license. Yancey testified that Jones "eventually provided" his identification. (Yancey Dep., Dkt. No. 92-11, at 73:18-19.) Walker corroborated his partner's testimony in his own deposition. (Walker Dep., Dkt. No. 92-12, at 58:14-18 (agreeing that, "after everything," Jones provided his "information" to the Officers).) Easley, who

11

came to assist Jones after the collision, also testified that he believed he saw Jones give his driver's license to the Officers. (Easley Dep., Dkt. No. 104-2, at 17:4-5.)   Thus, testimony from multiple parties, including the Officers themselves, suggests that they did not have probable cause to arrest Jones based on his failure to present his identification.   Summary judgment based on the assertion that Jones failed to present his driver's license would be improper.

The Officers also argue that they had probable cause to arrest Jones because he failed to sign the misdemeanor citation issued by the PST.   Tennessee law requires police officers to arrest an individual who refuses to sign a misdemeanor citation because, by signing the citation, the individual acknowledges that he has received notice of the charges and will appear in court on the listed date.   See Tenn. Code. Ann. § 40-7-118(c)(6).   Both Officers Yancey and Walker testified that they responded to the scene after receiving a call from the PST for backup because Jones had refused to sign the citation.[3]   (Yancey Dep. at 63-64; Walker Dep. at 58:19-25 – 59:1-7.)   Jones argues that he never saw the citation.   (Pl's SOF ¶ 13.)   He does not argue, however, that he ever told anyone before his arrest that the PST had failed to show him the citation.   (See id.)   Jones

---

[3] PSTs are not authorized to effect arrests.   (See Officers' Mot. at 3 n.4.) Neither party deposed the PST.

also offers no evidence contesting the Officers' joint account that they received a call requesting assistance because he refused to sign the citation.

Viewing the evidence in the light most favorable to Jones but also taking into account the Officers' objective perceptions on the scene, the undisputed evidence demonstrates that Yancey and Walker received a call for backup asserting that a PST had an individual who had refused to sign a misdemeanor citation issued following a traffic accident. The Officers had no immediate reason to doubt the PST's report because Jones did not tell anyone that the PST had failed to present him with a citation to sign. See Parsons v. City of Pontiac, 533 F.3d 492, 501 (6th Cir. 2008) (holding that a fact is irrelevant to the probable cause analysis if it was not part of the "totality of information that was known to the [officers] at the time of the arrest"). Jones did not offer to sign the citation once the Officers moved to arrest him. Thus, the only evidence known to Yancey and Walker was that Jones had failed to sign the misdemeanor citation, giving them probable cause to make an arrest. See Tenn. Code Ann. § 40-7-118(c)(6).

That Jones later disputed the PST's report does not destroy probable cause because it was reasonable for the officers to arrest Jones when no other available evidence pointed to his innocence. See Saucier, 533 U.S. at 205 (holding that courts

13

must apply an "on-scene perspective" when gauging the reasonableness of an officer's actions); McCumons v. Marougi, No. 09-1844, 2010 U.S. App. LEXIS 14283, at *6 (6th Cir. July 12, 2010) (noting that police officers are entitled to qualified immunity as long as their actions are reasonable, even if later proven to be mistaken); cf. City of Pontiac, 533 F.3d at 500 (noting that police officers must consider any exculpatory evidence available during their probable cause analysis).

Because Yancey and Walker had probable cause to arrest Jones for failing to sign the misdemeanor citation and their actions, even if mistaken, were not unreasonable, the Court GRANTS their Motion for Summary Judgment on Jones' Fourth Amendment unlawful arrest claim. Similarly, because Yancey and Walker did not falsely arrest or imprison Jones, Jones' state law claims for false arrest and imprisonment may not be maintained. See Coffee v. Peterbilt of Nashville, Inc., 795 S.W.2d 656, 658-59 (Tenn. 1990) (noting that unlawfulness of the "detention or restraint" is a necessary element of the torts of false arrest and false imprisonment). The Court, therefore, GRANTS summary judgment to the Officers on those claims, as well.

## 2. Excessive force

Jones' second claim is that Officers used excessive force when they arrested him, in violation of the Fourth Amendment.

14

The Supreme Court has held that "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. 396 (citation omitted).  As in other areas of inquiry under the Fourth Amendment, whether a particular use of force is unconstitutional depends on its reasonableness.  Id. To determine whether an officer's use of force was reasonable, courts examine the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)).  Courts must be careful not to employ "the 20/20 vision of hindsight." Id.  Instead, the Court takes the objective viewpoint of "a reasonable officer on the scene" and must realize that "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) (Friendly, J.)).  The law must "put the officer on notice that his conduct would be clearly unlawful" in the situation he confronted for summary judgment based on qualified immunity to be inappropriate. Saucier, 533 U.S. at 202 (citation omitted).

15

The parties offer diametrically opposed versions of what occurred on April 8, 2006. Jones testified that he was looking for his driver's license in his wrecked truck when the Officers approached him. The "[n]ext thing [he] knew [he] was being pepper sprayed" by the Officers and "ended up with a broke [sic] finger, broke [sic] rib, and . . . couldn't see what was happening." (Jones Dep. at 36:6-8.) Jones testified that he has always respected the law – in part because his brother is a state trooper – and that he never resisted or otherwise fought the Officers. (Jones Dep. at 13:3-4, 19-20; 37:4-8.) Jones also testified that Yancey and Walker waited until _after_ they had handcuffed him to pepper spray him. (_Id._ at 36:19-22.) Easley supports Jones' account. Easley testified that Jones never tried to hit the Officers, that the Officers slammed Jones into the trunk of their car twice, and that their actions were unprovoked. (Easley Dep. at 17-18, 38.)

Yancey and Walker describe a far different order of events. Yancey testified in his deposition that he asked Jones to sign the citation. Jones responded, "[F]uck you, I ain't got to give you shit." (Yancey Dep. at 70:4-5.) Yancey and Walker then attempted to take Jones into custody, at which time Jones "pulled loose" and "took a swing at Officer Walker." (_Id._ at 70:9-10.) Walker, Yancey, and Jones began to fight, prompting Walker to spray Jones so that they could place him in handcuffs.

16

(Id.)   According to Yancey, Jones' continued resistance prevented them from placing him in the patrol car.  The Officers had to pull Jones by his arms into the car because Jones was fighting and kicking.   (Id.)   Walker corroborated Yancey's timeline and testified that Jones began to resist as soon as they sought to place him under arrest.  (See Walker Dep. at 62.) Walker also specifically denied that he or Yancey slammed Jones into the trunk of their patrol car.  (Id. at 63:5-7.)  Officer Walker was certain that he sprayed Jones before he was placed in handcuffs and only after options short of using pepper spray had failed to subdue him.  (Id. at 66-67.)

In Champion v. Outlook Nashville, Inc., 380 F.3d 893, 898 (6th Cir. 2004), the court considered a Fourth Amendment excessive force claim where several witnesses reported that the responding officers had pepper sprayed the suspect and pressed his face into the floor after they had subdued him.  The court concluded that using pepper spray after a suspect is in custody and no longer resisting violates the Fourth Amendment's prohibition on excessive force.  Id. at 902-03; see also Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002) ("Courts have consistently concluded that using pepper spray is excessive force in cases where . . . the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else." (footnote omitted)).  The court also

17

held that case law clearly established that the use of pepper spray on a subdued suspect was unconstitutional. <u>Champion</u>, 380 F.3d 903.

Thus, taking the view of the facts most favorable to the Plaintiff, Jones was the victim of an unprovoked attack that resulted in his being pepper sprayed and slammed into the patrol car well after he was in handcuffs. <u>See</u> <u>id.</u>; <u>St. John v. Hickey</u>, 411 F.3d 762, 774 (6th Cir. 2005) (holding that "the right of a nonviolent [and non-resistant] arrestee to be free from unnecessary pain knowingly inflicted during an arrest [i]s clearly established"). The Officers, therefore, are not entitled to summary judgment based on qualified immunity on Jones' excessive force claim. Their Motion is DENIED. <u>See</u> <u>Champion</u>, 380 F.3d at 900 ("[W]here the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." (citation and internal quotation marks omitted)).[4]

### C. Failure to Train

Jones' also claims that the City and its police director, Larry Godwin, failed to train its officers properly or to respond adequately to citizen complaints of officer abuse, thereby demonstrating a deliberate indifference to the

---

[4] The Officers' Motion for Summary Judgment does not address Jones' state-law claims for assault, battery, and negligence or his federal claim for conspiracy to interfere with his civil rights under 42 U.S.C. § 1985(3). Therefore, they are not before the Court for decision.

constitutional rights of the City's citizens. (Plaintiffs' Response in Opposition to City's Motion for Summary Judgment, Dkt. No. 111, at 3-7.) ("Pl's Second Resp.")  The City responds that Plaintiff has failed to come forth with evidence demonstrating that the City, rather than its employees, Officers Yancey and Walker, did anything wrong.  Thus, the City argues that Jones has failed to demonstrate any basis for municipal liability.  (City's Motion for Summary Judgment, Dkt. No. 92, at 15-21.)

To state a claim under § 1983 against a municipality, a plaintiff must allege that the purported violation of a federal right occurred as the result of an illegal policy or custom. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Municipalities "may not be sued under § 1983 for an injury inflicted solely by [their] employees or agents." Id.  A governmental policy or custom, or a policy of inaction, must have been the moving force, directly causing the alleged violation.  Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403-04 (1997) (citing Monell, 436 U.S. at 694); see also Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis, 361 F.3d 898, 902 (6th Cir. 2004).  This requirement ensures that the municipality is held liable for deprivations resulting from the municipality's decisions only, not for all acts of its agents under a theory of respondeat superior.  Bryan

County, 520 U.S. at 404; see also Gregory v. Shelby County, 220 F.3d 433, 441 (6th Cir. 2000), abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health and Human Res., 532 U.S. 598, 609 (2001).  "Where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly."  Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).

For Jones to survive summary judgment on his failure-to-train claim, he must point to evidence showing that the City's failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact."  City of Canton v. Harris, 489 U.S. 378, 388 (1989) (emphasis added; footnote omitted).  Merely showing that the City is responsible for the training program in question is not enough.  Id. at 389.  That the City's training program is inadequate must be "obvious."  Id. at 390.  Evidence must demonstrate that the City "has ignored a history of abuse," thereby putting policymakers on notice that the training was deficient.  Birgs v. City of Memphis, 686 F. Supp. 2d 776, 780 (W.D. Tenn. 2010) (quoting Slusher v. Carson, 540 F.3d 449, 457 (6th Cir. 2008)).  This training deficiency "must be closely related to the ultimate injury."  City of Canton, 489 U.S. at 391.  It is not enough to show "[t]hat a particular officer may be unsatisfactorily

20

trained." Id. at 390. "Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." Id. at 391. This could be said of any incident and would make municipalities strictly liable for the actions of their officers. See id. Only if evidence meets these "rigorous standards of culpability and causation" may the claim proceed. Bryan County, 520 U.S. at 405.

The City submits the following undisputed facts about its police officer training program. The Tennessee Peace Officers Standards and Training ("POST") Commission has approved the curriculum used by the City for officer training. (City's SOF ¶¶ 11, 15.) Tennessee created the POST Commission to regulate officer training throughout the state and to guarantee certain minimum standards. (Id. ¶ 12.) All recruits must be POST certified before they can become commissioned law enforcement officers. (Id. ¶ 13.) POST requires a minimum of four hundred hours of training before an officer may receive his commission. Commissioned officers must complete forty hours of annual in-service training to maintain their certification. (Id. ¶¶ 17-18.) The training period, which covers twenty weeks, includes eighty hours of instruction on the law. Thirty of those hours are for instruction on lawful search and seizure practices under

the Fourth Amendment. (Id. ¶¶ 19-22.) Officer Walker completed the 39th PST training course and the 89th Basic Police Training Session in 2003. He earned a total of 840 hours of training during those sessions, more than twice the minimum number of training hours the POST Commission requires. (Id. ¶¶ 23-24.) Officer Yancey completed the PST and Basic Police Training Sessions in 2002, also earning 840 hours of training time. (Id. ¶¶ 25-26.)[5] In the following years, the Officers completed the required hours of in-service training. (Id. ¶ 27.)

It is also undisputed that the City has an established system for handling complaints. (Id. ¶ 36.) Complaints generally arise from three sources: citizens, administrative investigations originating within the department, and a confidential information line. (Id.) Squad or shift commanders handle minor infractions, but allegations of major offenses "require full investigation by the Internal Affairs Bureau (IAB)." (Id. ¶ 37.) If the IAB sustains the charges, it

---

[5] Jones challenges the information contained in paragraphs 23-26 in his response, claiming that the factual assertions are "at issue." (See Plaintiff's Response to City's Statement of Facts, Dkt. No. 111-2, ¶¶ 23-26.) To support his assertion, Jones provides only a general citation to "Dr. Cox's affidavit." (See Cox Aff., Dkt. No. 114-2.) Nothing contained in the affidavit's nine pages challenges or otherwise mentions the specific amount of training the Officers completed. (See id.); see also Cloverdale Equip. Co., 869 F.2d at 937 (stating that a party must present "concrete evidence" to support his claims against a motion for summary judgment). The City has submitted, as an exhibit to an affidavit, the complete Police Academy record of both Officers. It confirms the statistics above. (See Bullard Aff., Dkt. No. 92-13, Ex. A-B.) The Court takes as undisputed the fact that each Officer completed 840 hours of training, but draws no conclusions about the training's effectiveness.

refers the matter to police administration for a hearing on the charges and a final disposition. (Id. ¶¶ 41-42.) Sanctions include, in order of escalating seriousness, oral admonition, written reprimand, suspension, reduction in rank, and termination. (Id. ¶ 44.) The disciplinary records of Walker and Yancey include all complaints filed against them, all of which "were thoroughly investigated" by the IAB, and their records reflect that the City took disciplinary action against both Officers for complaints deemed valid. (Id. ¶¶ 45-47; see also Adams Aff., Dkt. No. 92-15, at 4-5.)

In response to the City's Motion, Jones has filed the affidavit and deposition of Terry C. Cox, Ph.D, a professor in the College of Law Enforcement at Eastern Kentucky University. (Cox Dep., Dkt. No. 92-9, at 10; Cox Aff., Dkt. No. 111-4.) Cox is a former police officer with the Marietta, Ohio Police Department. (Cox Dep. at 6.) In his affidavit, Cox evaluates the actions of the Officers during their encounter with Jones. Cox does not address any other alleged incidents of unlawful arrest or use of excessive force by the Memphis Police Department. Other than the conclusory assertions in Plaintiff's pleadings, the record is devoid of evidence about whether the City should have been on notice that its training polices were inadequate because of a large number of sustained complaints of excessive force or unlawful arrest. (Compare Cox. Dep., and Cox

Aff., <u>with</u> Pl's Second Resp. at 4-8 (asserting multiple, repeated failures on the part of the City).) Cox also candidly testified that he had not been asked to research the history of the City's response to complaints of police misconduct or the efficacy of its disciplinary regime. (Cox Dep. at 65:9-17.)

Cox does raise questions about the procedures employed by Yancey and Walker during their arrest of Jones. He asserts that it was improper for an officer other than Yancey or Walker to sign the affidavit that accompanied the arrest report stating what had occurred. (Cox Aff. at 5-6.) Cox also states that the actions of Yancey and Walker, along with what he terms "gross contradictions" in the Officers' versions of what occurred, demonstrate that the City must have been deliberately indifferent in its training. (<u>Id.</u> at 6-8.)

Although the Court assumes that these criticisms are valid, they do not constitute evidence allowing a finder of fact to determine that any failure to train on the City's part amounted to deliberate indifference toward the rights of its citizens. There must be more than proof that additional training might have caused Walker and Yancey to act differently. <u>See</u> <u>City of Canton</u>, 489 U.S. at 390-91 (noting that it will not "suffice to prove than an injury or accident could have been avoided" with additional or better training). No evidence exists to demonstrate that the City ignored a history or pattern of abuse.

See Slusher, 540 F.3d at 457 (noting that a plaintiff must demonstrate that the municipality "ignored a history of abuse"); St. John, 411 F.3d at 776 (holding that a plaintiff will ultimately have to show "prior instances of unconstitutional conduct" to have a chance of prevailing (internal quotation marks and citation omitted)); Birgs, 686 F. Supp. 2d at 780-81 (dismissing failure-to-train claim where plaintiff failed to put forth any evidence of other incidents of police brutality).

The only evidence in the record supports the City's contention that it has a thorough training program that exceeds the minimum standards set by Tennessee for officer certification and that Yancey and Walker successfully completed that program. (See Bullard Aff., Dkt. No. 92-13, Ex. A-B.) The evidence also shows that the City investigated all complaints against the Officers and disciplined them when subsequent investigations substantiated some of those complaints.[6] (Adams Aff. at 4-5; City's SOF ¶ 45-47.)

The shortcomings that the Plaintiff and his expert do identify are not "the 'moving force' behind the . . . deprivation of federal rights" Plaintiff alleges. Bryan County, 520 U.S. at 400. Making certain that the proper party executed the post-arrest affidavit would not prevent the use of excessive

---

[6] The City received no complaint against the Officers about their conduct on April 8, 2006. (City's SOF ¶ 49.)

force to effect an arrest or prevent false arrests.  Cf. id. at 405 (holding that a "rigorous standard of culpability and causation" is necessary to prevent respondeat superior liability). Plaintiff has pointed to no evidence in the record that would allow a trier of fact to find that the City was deliberately indifferent to the rights of its citizens by poorly training its police officers.  The Court, therefore, GRANTS summary judgment to the City and Director Godwin on Plaintiff's failure-to-train claims.  Because of the same lack of evidence, the Court also grants summary judgment to Godwin on Plaintiff's state-law general negligence claim.[7]

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Officers' Motion for Summary Judgment on Plaintiff's Fourteenth Amendment, Fourth Amendment unlawful arrest, and state common law false arrest and false imprisonment claims.  The Court also GRANTS the City and Director Godwin's Motion on Plaintiff's failure to train and negligence claims.  No claims remain against the City and Godwin.   The Officers' summary judgment Motion on Plaintiff's Fourth Amendment excessive force claim is DENIED.

---

[7] The Court dismissed the negligence claim against the City in its prior order.  See Jones, 2010 U.S. Dist. LEXIS 13792, at *10-13.

26

So ordered this 27th day of August, 2010.


                               s/ Samuel H. Mays, Jr.
                               SAMUEL H. MAYS, JR.
                               UNITED STATES DISTRICT JUDGE